Edward >M. O ’Gorman, J.
By application dated April 2,1965, the Village of Cornwall sought the approval of the respondents of a proposed interconnection with the Catskill Aqueduct. This aqueduct is one of the main water-bearing arteries of the City of New York, carrying water from up-State watershed areas to that city. It consists of a concrete tunnel covered by earth, conveying the water by gravity through several municipalities, including the Village of Cornwall, to a point on the Hudson River at Storm King, where the aqueduct becomes a tunnel under the Hudson River until it reaches the river’s east bank.
By the terms of chapter 724 of the Laws of 1905 (known as the Water Supply Act), any municipality through which the Catskill Aqueduct passes is entitled as a matter of right to take and receive water from the said aqueduct. It is further provided by the statute (now Administrative Code of City of N. Y., § K51-42.0, subd. d) that it shall be the duty of the Commissioner (respondent herein) to grant a permit or authorization for such ’ connection under reasonable rules and regulations.
A conditional approval of the Cornwall application to connect with the aqueduct was granted on November 30, 1965, subject to: (1) the requirements of section K51-42.0; (2) approval by the Chief Engineer1 of the Bureau of Water Supply of the City of New York of the plans and specifications of the proposed connection; and (3) accord being reached between that city and Cornwall stipulating the terms and conditions under which the connection would be made and the water taken. *601 Subsequent to receiving this approval, the Village of Cornwall proceeded to construct a filter plant.
On March 14, 1973, the present Commissioner, the respondent Lang, withdrew the conditional approval granted by his predecessor on November 30, 1965. The Village of Cornwall now brings this article 78 proceeding seeking to have this court annul the decision of the respondent Commissioner Lang dated March 14, 1973, and further directing that the respondents issue final approval of the application of the petitioner to tap the Catskill Aqueduct.
The respondents, by their answer, deny that the respondent Lang has acted in excess of his jurisdiction in revoking the conditional approval of November 30, 1965. It is contended on behalf of respondents that the respondent Lang has no duty to permit a connection to the city’s aqueduct system where such connection entails an unreasonable risk of damage to the aqueduct or damage to the water .supply of those served by the said aqueduct; that said respondent has no duty to permit such connection when the requirement for the said water supply is made necessary by the unreasonable abandonment by the Village of Cornwall of an existing source of water supply, and that inasmuch as the application of the Village of Cornwall to make a connection with the aqueduct is related to the plan of Consolidated Edison Company to construct the Storm King pump storage project at Storm King Mountain, Cornwall, New York, the application is in effect being made on behalf of a public utility rather than on behalf of a municipality, and that as such, it is not such an application as is required to be granted by the respondent Commissioner.
Dealing with these contentions in inverse order, the record is clear that the application made on behalf of the Village of Cornwall was for the purpose of acquiring a source of water supply for that municipality. Assuming for the sake of argument that the primary purpose of the interconnection sought by petitioner is to enable the petitioner to abandon its ‘ ‘ Upper Reservoir ” for use by Consolidated Edison Company, it is clear that the water supply being sought by petitioner is not the same supply as the 6 £ Upper Reservoir ”, nor is it contemplated that the water supply furnished by the aqueduct will be turned over to the use of any public utility.
The statute granting the muncipality the right to make a connection with the said aqueduct, subject to reasonable regulations, does not make that right conditional upon the prior approval of the municipal objective in seeking the water supply *602 in the first instance (see L. 1905, ch. 724 [Administrative Code, § K51-42.0]).
The foregoing reasoning would also seem to dispose of the respondents’ second contention that if the abandonment by the Village of Cornwall of its “ Upper Reservoir ” is unreasonable, its application to exercise the rights granted to it by chapter 724 of the Laws of 1905 should be denied. There is no such prior 'limitation on petitioner’s right set forth in the statute, and the court is not at liberty at this time to impose such limitation nevertheless.
We come now to the argument of the respondent Commissioner that in order to properly discharge his duties in connection with the conservation and protection of the water supply of the City of New York, he has the implied power to refuse to permit a connection with the aqueduct where no reasonable rules and regulations can be applied to the connection which would adequately protect the safety of the water supply. It is the .respondent Commissioner’s contention that the application of the Village of Cornwall presents such a case.
It should be noted at the outset that the thrust of the respondent Commissioner’s objection is not that the process of making an interconnection between the water mains of the Village of Cornwall and the aqueduct as it passes through that municipality poses any particular danger to the water supply of the City of New York when properly regulated. The respondent has an ulterior motive, and he reasons as follows: If the Village of Cornwall is refused permission to connect with the aqueduct, the village will then be unable to make available its ‘ ‘ Upper Reservoir ” to the Consolidated Edison Company, and lacking such reservoir facilities, the Consolidated Edison Company will be unable to construct its pump storage facility on the Storm King Mountain. The Commissioner’s objective is to prevent the construction of the Storm King facility. It is his contention that in the course of construction of the underground powerhouse, consequential damage may be done to the aqueduct itself where it crosses the Hudson River, as a result of the blasting operations which will necessarily be involved in the construction of the powerhouse.
Upon analysis, it seems clear that the connection of the village mains to the aqueduct, per se, under reasonable rules and regulations, will not pose any danger to the aqueduct itself. Such danger as is called to the court’s attention by the respondents is posed .by blasting operations unrelated to the process of making an interconnection of water mains to the *603 aqueduct. It would seem, therefore, that the respondent Commissioner would have no justification in refusing approval of the village’s application to connect with the aqueduct. In the event that contemplated Masting operations on the part of the Consolidated Edison Company should pose an unreasonable risk of danger to the aqueduct facility, it would seem that the respondent Commissioner, in the exercise of his implied authority to protect the water supply, could move (if the matter is not now res judicata [see mfra]) to restrain'such blasting operations until appropriate safeguards had been provided.
However, it should be pointed out in this connection that the question of possible damage to the aqueduct has heretofore been considered at considerable length by the highest Federal courts and by the highest court of this State. In the course of prior litigation, the Consolidated Edison powerhouse was redesigned in order to meet objections that the project might impair the scenery of the area, and was to be placed entirely underground. This, however, required that the aqueduct and the powerhouse be closer together than originally planned. Upon the objection of the City of New York, the Federal Power Commission ordered that proceedings be reopened to consider evidence that location of the powerhouse at a distance of 140 feet from the aqueduct might endanger the structural integrity of the aqueduct. The commission found, at the conclusion of an extensive hearing, that the aqueduct’s safety would not be jeopardized, and on appeal, the Federal Court of Appeals, in Scenic Hudson Preservation Conference v. Federal Power Comm. (453 F. 2d 463, 479, cert. den. 407 U. S. 926), stated: “ The Commission concluded that excavation of the powerhouse site would not cause damage to the Moódna Pressure Tunnel, that controlled blasting during construction would not endanger the Aqueduct and, generally, that ‘ the probability ■of damage to the Aqueduct is remote.’ We think that there is substantial evidence in the record to support the Commission’s determination.”
The court went on further to state (p. 480): “Where the Commission’s conclusions are supported by substantial evidence, the courts must accept them.”
In a prior article 78 proceeding herein, the petitioners urged that the State Commissioner of Environmental Conservation should have required evidence on and assessed the effect of the construction and operation of the Storm King facility on the structural safety of the Catskill Aqueduct. In sustaining the findings of the Commissioner, the Court of Appeals stated: *604 “ We thoroughly agree with the Commissioner and Con Ed that it is improper to relitigate the Aqueduct matter in this proceeding, It is an issue already litigated between the same parties in the Federal courts, and may well be concluded by the doctrine of res judicata”, (de Rham v. Diamond, 32 N Y 2d 34, 53.)
The Court of Appeals in the same case (p. 44) points out that by subdivision (b) of section 21 of the Federal Water Pollution Control Act (U. S. Code, tit. 33, § 1171, subd. [b]), Congress has relinquished only one element of the otherwise exclusive jurisdiction granted the Power 'Commission by the Federal Power Act, this dealing with applicable water quality standards of the State. 'Congress, the court points out, did not empower the States to reconsider matters unrelated to their water quality standards, which the Power Commission has within its exclusive jurisdiction under the Federal Power Act. The Court of Appeals went on to state (p. 45): “It is equally clear that the Commissioner has neither the authority nor the duty to delve into the many other issues — which had been investigated and decided by the Federal Power Commission in the course of the extensive proceedings it had conducted— such as, for instance, (1) the safety of the Catskill Aqueduct
In view of the foregoing, the court is of the opinion that Commissioner Lang has acted in excess of his jurisdiction in refusing a permit to the Village of Cornwall to make a connection with the Catskill Aqueduct, and the Commissioner will be directed to issue such permit, subject to such reasonable rules and regulations as he may prescribe.
The matter will he remanded to the respondent for the purpose of considering and establishing the said rules and regulations.